1, 6, 2, 3, 4, 7, Hayat Sindi v. Samia El-Moslimany et al. Good morning, Your Honor. My name is John Kiernan, and I have the pleasure of representing the defendant appellants in this matter. At first blush, this case may appear to be a highly charged personal dispute, but in fact it is a constitutional case of significant issue. There are a number of concerns that are presented here, and primarily we are engaged in the scope of free speech, and whether or not the traditional rule against enjoining libel or a modern trend rule would allow for an injunction. But in either case, there is no predicate finding at the trial level of defamation. What authority do you have that makes a predicate finding requisite? There is a finding by a judge after an evidentiary hearing. In this matter, there are certain predicate facts, and if I could listen, they'll be brief, and I can answer your question very directly. The first predicate fact is that the plaintiff is a public figure. The second one, there were a number of emails and blog site references, all in the public domain, which is significant. These references as being defamatory were hotly contested. There were allegations on the defense side. You don't have to tell us the facts. We've all read the briefs. You have said consistently, without citing a shred of authority, that a jury finding is essential to any consideration of permanent injunctive relief, and I haven't been able to find any case law that says that. Some sort of judicial finding is clearly requisite, but you had a judicial finding here, a judge finding, after an evidentiary hearing. I'm asking you, if I miss something in your brief, do you have any authority that says a jury finding is a prerequisite to an application for permanent injunctive relief in this area? Even when there's a judicial finding? Yeah. Yes, the Seventh Amendment, Your Honor. Yeah, but you never raised that. You never raised that in your brief. In your brief, you didn't raise it below. But it's so fundamental to our jurisprudence that the Seventh Amendment protects. Not so fundamental that you can't waive it. We certainly didn't waive it. We claimed it. We awarded it. No, but the point, you can waive. Here's Seventh. You got a jury trial, correct? Yes. We asked for it, and we received it. Okay, and you had liability imposed after a jury trial. You're now challenging the remedy. The remedy was imposed by a judge after making a finding of liability. The judge did that at the hearing, right? He asked for the injunction after finding her own conclusion that there was a defamatory statement. You made no objection on Seventh Amendment grounds at that point, and you don't make any in your brief. Well, it's clear that our whole theory is, and it may be so fundamental that we didn't address it directly, but having claimed the jury trial, the judge was not entitled, and this is not a Rule 50 situation. It was not a Rule 59 situation, and it clearly was not a Rule 52 situation. This was a jury trial. And under Ross v. Bernard in 1970, libel was tribal to a jury under the common law, and the Seventh Amendment is clear we're entitled to it. The judge didn't take anything away from the jury. The jury never made the decision. Well, just take a jury trial case in which the judge, even though there was a jury trial, you requested a jury trial, right? And the judge just orders the finding of liability. And you say nothing. And on appeal, you don't raise a Seventh Amendment problem. I mean, there's no Seventh Amendment. We can't do anything about that, can we? If I can divide your question into the injunction versus the original finding. The injunction, we clearly objected strenuously to it and filed a brief in opposition to the injunction. But you did raise the Seventh Amendment when you did it. You may have other good objections to the injunction, but what we're trying to get at is if the only basis for your claim that a jury finding was essential, all right, then that claim and the only authority you have on that is the Seventh Amendment, then you've probably waived that by not mentioning it in the district court or in your appellate briefs. Well, we certainly didn't waive it, Your Honor. Did you mention it? In the brief, it's not directly. Did you mention it in the brief? It's not mentioned directly in the brief. It's either mentioned or it isn't. It's inherent in the jury trial right. It's your idea every time you make a reference to there needs to be the adjudicative finding. Correct. Implicit in that is obviously there wasn't here because the only entity empowered to make an adjudicative finding was the jury since this was a jury trial case. That's what your logic was? Yes. And you should read the brief with that understanding. That is correct, Your Honor. Okay. And I think the difficulty comes from the fact that there are two predicate facts here that are important. One is the chalk going to the jury, and that can be found in the joint appendix. Okay. Was there objection to that? There was not, Your Honor. And there was no objection to the use of the chalk at trial, right? You are correct, Your Honor. Okay. But I would suggest that there are two responses to that. First, it's plain error. And secondly, What's plain error? The fact that, well, if I can conclude my sentence, I think I can make sense of my answer. And that is the fact that the chalk had 132 separate statements that were given to the jury. And in response to that chalk with 132 separate statements, there was a general verdict. Therein lies the problem. We can't discern whether or not the jury rather made permissible decisions or impermissible decisions because there was no allocation as to who said what, whether or not it was true, whether or not it was opinion, whether or not it was rhetorical. This is with respect to whether there's an adjudicative finding as to the statements that were enjoined? That's correct. Except we know it was enjoined, and we know she effectively rendered a special verdict because she tells you these are the statements that are defamatory and these are the ones I'm enjoining. So who cares about the chalk? I'm suggesting that's not a special verdict, and she didn't have the authority to do that. Then we're back to the point about whether you raised it. I thought you were raising another point as well because you mentioned the phrase plain error. Are you getting into the point that you think that there should have been required findings by the jury as to which of the statements were defamatory? Absolutely, yes. But if that's so, then plain error is the test, and I agree that it would be since there was no objection made on that ground at trial or in the request for instructions. Then you've got to show that it's more likely than not that there's a reasonable probability that the outcome would have been different if there was some request for a specification. And you have, as you said, 132 statements, the overwhelming majority of which, upon an examination of the record, appear to be defamatory. So how can you show that the result would have been different even if there are 5 or 10 that may not be defamatory? I think not. However, I would actually add something to my plain error approach, and that would be the plenary review by this court. It's a full record review. And that is extremely important to us because of its constitutional significance. This is an ab initio review, and you are not held to what happened at the trial court. And as you look at the chart, the first one is, and I'm quoting, professionally, Cindy promotes herself as one of the world's top biotechnologists. That is not defamatory. No, I said to you, assumed favorably to you that there are some on the chart that may not be defamatory. There are clearly others that are. Cindy never wrote her own doctorate dissertation. Her entire doctoral degree was ghost written and ghost obtained. Cindy lied about her age in order to make herself eligible for various young scientist awards. I mean, those are statements from which the jury could have found, given the evidence at trial, were demonstrably false. I understand the distinction between factually verifiable and opinion or rhetoric or hyperbole. However, out of 132, there are numerous ones that clearly are not defamatory. How many do you identify? In your brief, it seemed like you were identifying five to ten. It wouldn't matter. And I go to the Levinsky case. On plain error, the whole idea is that the balance might matter. I suggest that it's not a numerical counting, that we're not balancing in that fashion. We're going to the cases like Greenbelt, the United States Supreme Court, or Levinsky versus Wal-Mart, where in Levinsky versus Wal-Mart, there were two. One was found not to have been defamatory, and one was potentially. In that circumstance, it would be reasonably probable that the problematic statement was relied on in coming to the verdict. When there's 600 statements, of which five are problematic, and there's instruction as to how to go about determining whether something's defamatory, why would it be reasonably probable that the jury based the finding of defamation on the six problematic statements rather than the 600 that weren't problematic? I suggest it is not a numerical balance. Rather, it is whether or not the jury engaged in speculation, or the reviewing court must necessarily engage in speculation. Did I get the idea? If there's one problematic statement on the chalk, and there are 5,000 non-problematic statements, your position would be you have to reverse some plain error? My position is that you would have to review on the alternative ground. And I reviewed it, and I see 1,000 good statements that cause no legal problem, and one statement that's problematic, and a properly instructed jury. Do I have to reverse some plain error in your view? You could reverse some plain error, and the error is not the numerical balance, but rather whether or not the jury was required to specify. And that's what those cases say, Simon versus Navin. No, that's not the error.  And you determine whether that error is plain by determining the degree of probability that that error affected the outcome. And if the overwhelming bulk of the evidence deals with statements that are highly likely to have been found defamatory and could legally be found defamatory with no problem, then you can't show that reasonable probability. That's the third prong of the plain error test. We're not disputing with you that there's a clear, obvious error, but you still have to show it affected the substantial rights. That's the third prong of plain error. And the question is how, when there's this many statements that cause no problem submitted to the jury and a number that caused a problem, how can you deduce that it's reasonably probable that the jury, notwithstanding the correct instructions, did the wrong thing and relied on the problematic statements? I contend that you have to return it to the trial court to make that decision, because this court doesn't have the logistical capacity to look at those statements. You've just told us that we're constitutionally mandated to make an independent review of the evidence. Yes. So we don't have to return that to the trial court. Whatever the trial court says, we'd have to independently review anyway. Except for the fact that, as Judge Talwani said in her decision in October of 2016, she was not entitled to make decisions or determinations as to the credibility of witnesses. That's on page two of her. No, that's for the jury. Understood. Yeah. But if she can't take it from the jury, because it's a jury file. You're saying you'd have to throw out the verdict. Yes. But just to be clear, if I understand it, can you imagine a case in which a problematic statement goes to the jury in which that would not have to be thrown out? No. Okay. I got it. I got it. It's possible, but Rule 49 allows for special questions. If the charge is going to go to the jury, there should have been Rule 49 special questions to be answered by the jury. Is this one true? Is this one opinion? Is this one false? And with a heightened burden for actual malice. And, of course, you had the opportunity, as did the plaintiff, to ask for those special questions. I don't contest that, and I suggest it should have been done. Yeah, but neither one of you did it, so that's water over the dam. True, except for the fact that because of the constitutional significance in protecting free speech, this court has the authority and the responsibility to ensure that these are, in fact, defamatory and made with actual malice. That was not done by the jury. Can you talk about the injunction? The injunction. The injunction itself. Putting aside for a second the question of whether there was an adjudicative finding that could support the injunction, I understand your contention that there was no adjudicative finding, notwithstanding what the district court did, because the district court wasn't empowered to make such a finding given it was a jury trial. Correct. Okay, I got that. There's a separate question as to whether this injunction is a valid injunction of the First Amendment because it's overbroad. As I read your brief, you make a particular argument as to why it's overbroad. But that's the only argument I see you making. So what is your argument as to why the injunction is overbroad? That would be the fundamental rule against enjoining libel because it's free speech. So if you take it from that approach, and I think probably the best and most articulate discussion of this is in the concurring opinion by Judge Sykes in the McCarthy case. It's actually very interesting because she lays out the rule against injunctions and then the so-called modern trend, and she says that she doesn't agree with the modern trend because of the significant impact on free speech under the First Amendment. And she goes through that which is required. So one argument is you're making you can never enjoin libel. Is that your argument? That is certainly the traditional rule. Yes, and the Supreme Court has never said that. Do you argue to us that you would like us to adopt the rule as the ground for reversing the district court's injunction that you may never enjoin libel? I have not. Okay, so that's not your argument. What is your argument as to why the injunction is overbroad? Putting aside the argument about the lack of predicate findings, the overbreadth comes from things in the opinion by Judge Talwani where she says these six statements are not limited to these six statements. We don't know. It's the same argument, perhaps, but we don't know whether or not there's a specific finding of the actual malice requisite, the defamatory components of the argument. That's the only overbreadth argument you're making? The fact that it's going into the future. And I think the Levinsky case discusses how circumstances change and context changes. So a statement in one context might be defamatory and could be enjoined, but if you change the context as to how it's presented or the audience to whom it is presented, that would then change again. So defamation doesn't exist by itself. It changes. And you make that argument in your brief? No, not the contextual argument. Right. You don't make that argument in your brief. You are correct, Your Honor. So that's, well, you're suggesting us to reverse on a Seventh Amendment argument you didn't make in your brief and on a contextual argument you didn't make in your brief, and that makes it hard for us. So what is in the brief that you think supports reversing? The contextual argument is subsumed within the lack of specificity. So I think the overriding argument is present. We didn't break it down into, you know, what context. I didn't cite the context. You are correct. But the overriding position of us is that it was overbroad because it goes into the future, and we don't know what the future holds. And I think that that is presented. And the case law cited certainly suggests that there has to be greater limitations, greater constraints if an injunction is going to be used. But the strength of my argument is clearly that there is no predicate finding, and this Court should not engage in speculation. And I thank you for allowing me the time. Thank you. Good afternoon. Still morning. May it please the Court, David Rich, and I represent Dr. Cindy. Mr. Rich, would you start where we left off with your brother, Counsel, in the viability of the injunction? Absolutely. And I think that the way Judge Talwani approached the issue was the precisely correct way. We had a jury verdict, admittedly, that did not make specific findings as to which statements were defamatory and which were not. We moved for a TRO. Judge Talwani says, no, I don't have a record before me from which to make that evaluation. We filed a motion for a preliminary injunction. We had a hearing. She made an independent finding based upon the facts that she heard over the week trial. She entered an order saying, it is my intention to enjoin six statements, not the whole litany. And she was clear, it wasn't as if she was finding that the others were not defamatory. I understand what you did, and I wasn't getting at this self-amendment argument, which quite probably is waived. I'm getting at the injunction itself, right? And I question whether and how this injunction is enforceable. Excuse me. Sure. This injunction appears, there are six separate statements, words, and it appears to me as I read it to enjoin any use, publication, republication, et cetera, of any of those statements without regard to context. You read it the same way? I agree that she has enjoined them from uttering the six statements that have been identified. For any purpose and in any context. I think that's right. So that means that the party enjoined can't even take Judge Tawani's order and hand it to her lawyer and say, how do I get out of this or how do I abide by this? Well, I don't know that that would be the definition. You just agreed with me that there are no conditions in the order. It's in all contexts and for any purposes. Well, I think I don't know whether the hypothesis that you've just provided would be publishing a statement. Of course it is. You hand someone a piece of paper with a statement on it, that's publication. How about she writes an editorial and the editorial says, I have been unfairly subject to the following injunction. And then she quotes the injunction. I think that would be improper. And I will say, Your Honor, that what the judge did was she said, it is my intention to issue the following injunction. Let me know if you have any objections. And no objections were waived to the framework of the injunction. I get the waiver argument. And I'm going to come back to it in a second. But just if it was challenged below and the person subject to the injunction said, that injunction cannot be lawful because it would prevent me from writing an editorial apologizing for making the following statement. Because I'd have to repeat the statement. Would you think at that point that the injunction was overrun? I would think that she would need leave of court to seek relief under the injunction. And here's why. And it's a very important policy reason why. This is speech that has been adjudicated to be defamatory. The repetition of that speech in whatever form, even if it's in the form of an apology, isn't a republication of the statements which underlie the jury's finding and the lower court's finding. So the mere publication of it, even if it's framed as mea culpa, mea culpa, mea culpa, is causing and would cause, and the court found, irreparable injury to my client by having statements that have been adjudicated through a jury trial and then a court to be false. How can that be irreparable injury? I mean, the traditional remedy for libel or for defamation is damages. That's why the rule at Equity is that Equity will not enjoin a libel. Well, a couple of answers to that. First of all, and there's case law. Some of the cases that we cite speak to this very policy reason. The same argument that you have. Federal cases? I think there's cases in California. Federal cases? I think the McCarthy case speaks to the issue. No, you're talking about the concurrence in the McCarthy case, not the majority opinion. Well, the majority opinion speaks to the conundrum a successful defamation plaintiff finds them in, particularly where they've obtained a judgment, which may very well not be collectible, against someone who then has no incentive to stop the behavior for which they've been adjudicated, for which there is no First Amendment protection. Because if the speech has been adjudicated to be defamatory, there is no... But the words haven't been. Excuse me? Words are not defamatory. Actions using words are defamatory. And that's what this... No. No, it enjoins words no matter the purposes one has in using the words. And that is not defamation. Defamation is only when I use the words with malice, et cetera. Using words in a newspaper that reports on the injunction, describing what the injunction said, is not defamation. Because words in and of themselves, no matter how organized, cannot be defamatory. Respectfully, Your Honor, I think that what you're essentially getting at is the policy consideration as to whether you can enjoin speech post-judgment. So it's not a prior restraint, it's a subsequent restraint. And obviously, to the extent this Court is of the belief that you cannot enjoin speech irrespective of whether a jury makes a determination that it's defamatory, whether the Court makes a judgment that it's defamatory, it cannot be enjoined. And if that's the position of this Court, then that's the position of the Court. It seems to me that there is no limit to what you believe is now enjoined. It's not only these statements. It's anything about the statements. It's anything which puts any gloss on the statements. Your view, at least as I understand what you've been saying, is that it's all enjoined. Well, as it relates to the six statements and Judge Talwani's order, it really does speak for itself. I don't think there's any confusion. It prohibits the defendants from repeating or directing others to websites, reprinting their statements, the following statements. So that's what they're enjoined from repeating. So if they wrote an editorial in the newspaper about this case and about what it did,  Correct. But see, just to be clear, a narrower injunction would have just enjoined them from libeling again through use of these statements. Would you put them on pain of contempt if they did it again? But you would then not be capturing the newspaper because nobody plausibly could think that in doing that you were defaming anybody. So I guess what you're saying is that they can't say Hyatt Cindy is an academic or scientific fraud unless they are cloaking it in some other statement that Unless at the time they say it, it would constitute libel. Well, I don't think that an injunction order that says you have to comply with the law, which is essentially how you're framing the issue, is sufficiently warranted or sufficiently narrowed by the nature of the evidence, the finding of the jury, and the conclusion of how Judge Talwani perceived the evidence and the threat to my client that this information would be recycled, regurgitated, and republished in a way that was harmful to my client without having to go through This is reproducing the debate in the California Supreme Court decision, right? So your position is what should happen is you get to adjoin the words because we don't trust the defamer. Correct. And therefore, anytime they want to use those words, they've got to come back because they know that we don't trust them to use them in a non-defamatory way. I think that that's right. I think that that's how the equities, and again, it's an equitable remedy here. You have a jury adjudication from our perspective, very clear conduct, which gave rise to this. And to impose the burden on my client to now have to file another lawsuit and go through the expense, the litigation of demonstrating harm and all of those sorts of things is just inconsistent with what hopefully Judge Talwani was hoping to accomplish here. Okay. Particularly where, and I don't mean to interrupt you, particularly where during the trial the defendant said, I asked the defendant on the scene, is it your intention to continue to repeat these sorts of things? And essentially she said, I reserve the right to continue saying these things irrespective of the outcome of the jury. I hate to cut you off. Can we, can you just address the waiver issue? Because as interesting as this issue is, at least as I read the blue brief, the only over-breath argument that seems to be raised relates to the reference to the other websites. Is that right? It's hard for me to understand their position. I don't think they framed the issue in a way that I can respond intelligently, except to go back to where I sort of started, which was Judge Talwani entered an order. Well, maybe I asked you, because you would win if they waived these issues. Well, I'm happy. I'm just kidding. Go ahead. Well, yeah, but it's kind of serious. Right. So I don't mean, I mean, I just want you to tell me. Sure. You don't say, I don't know if you say they waived it. No, sir. So I'm just trying to figure out what, there's no argument in the blue brief that reproduces the conversation we've just been having. And yet there's nothing in your brief that says because of that, they lose. So what am I supposed to do? Because this is a pretty big issue for the court to be deciding. And, Christian, I think if I understand your, the question you are asking of me is, I'm not sure how I could have possibly made an argument about a waiver of an argument that hadn't been articulated, if that's what you're saying. I certainly was left with the impression, starting at the trial court where Judge Talwani issued, certainly they argued that the court didn't have the power because the jury didn't make the specific, no question about that. Judge Talwani rejected that. That's very clear in the transcript and in her order. She then issued an order indicating an intent to enter an order and said, speak now or forever hold your peace. I think that would have been the moment to say, this is too broad. This isn't right. This isn't right. And here's why. And then it would have been preserved. And then, of course, reciting that in the brief would have helped too. So we found ourselves in the position of focusing on the arguments, really the McCarthy arguments and Judge Ponser's decision and what that meant and how it played out. That's really the argument we made there as well as some of the other criticisms that they did make in the brief about some of the alleged non-defamatory statements really weren't part of her injunction order. They're complaining about, to your point, about the 300 statements, and there were a handful that were different. If I could focus for just 30 seconds on that argument. Interestingly enough, the Massachusetts Appeals Court actually just dealt with this issue about six weeks ago in a case I was involved in. So 92 Mass. App. Court 114. You summed us at 28J1. I absolutely will. But I'll just give you 30 seconds. It's Van Loo versus Iliopoulos. And in that case, the jury found 29 statements to be defamatory. The Appeals Court, in an argument, was a few of just the same argument. A few really weren't. And what the Appeals Court held in that case is that the three that argue arguably weren't defamatory, didn't meet the constitutional test, were similar in context and theme. That's their words. And did not add measurably to the jury's damages award from their review of the transcript. So really, it's from a slightly different angle where we've been focused on clear error. But essentially, that was the view of the Massachusetts Appeals Court. Further appellate review was denied yesterday. So I think that that case, and we'll send you a letter on that, but that case really does answer, in a lot of respects, what we heard a little bit about vis-à-vis the very small amount of statements that they're arguing about. I would respectfully suggest that if you actually look at the record, there is ample support in it for every single one of the statements. But we're talking about something slightly different. If there are no further questions, I rest on my brief and thank the Court for its time. Thank you.